# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| Adilson Jose MONTIERO | ) Case No. 2:20-sw-1042 KJN |
| | ) | |
| | ) | |

**FILED**
Nov 12, 2020
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**Adilson Jose Montiero**

located in the Eastern District of California , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §841 | Distribution and possession with intent to distribute cocaine, methamphetamine, and counterfeit MDMA tablets containing methamphetamine |
| 18 U.S.C. § 922(g) | Felon in possession of a firearm |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☒ Continued on the attached sheet.

☐ Delayed notice days (give exact ending date if more than 30 ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Josh Matas

*Applicant's signature*

Special Agent Josh Matas
Drug Enforcement Administration

*Printed name and title*

Sworn to me and signed telephonically.

Date: November 12, 2020

City and state: Sacramento, California

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Joshua Matas of the DEA, being duly sworn, depose and state as follows:

### Background and Expertise

1. I am a Special Agent of the Drug Enforcement Administration (DEA), San Francisco Field Division, and have been so employed since 2018. I have had numerous assignments since beginning with DEA, including being assigned to the Sacramento Division Office since November 2018 and the OCDETF Strike Force Team in 2019.

2. I have received specialized training in narcotic investigation matters including, but not limited to, drug interdiction, drug detection, money laundering techniques and schemes, drug identification, and asset identification and removal, from the Drug Enforcement Administration (DEA). In addition, I graduated from the DEA Basic Agents Academy at the FBI Academy at Quantico, Virginia. In total, I have received in excess of 500 hours of comprehensive formalized classroom instruction in those areas outlined above.

I have assisted in the execution of more than 25 warrants to search particular places or premises for controlled substances and/or related paraphernalia, indicia and other evidence of violations of federal drug narcotics statutes. As a result, I have encountered and become familiar with various tools, methods, trends, and paraphernalia and related articles used by traffickers in their efforts to import, conceal, manufacture and distribute controlled substances. Central to all trafficking efforts, regardless of the drug, is the traffickers' effort to make a profit from those dealings or transactions, either for the purchase of additional substances or material gain. I have been actively involved as a co-case agent in more than 5 investigations and have talked with confidential informants involved in the trafficking of narcotics, and this has helped form the basis of my opinions.

### Scope of Requested Search Warrant

3. This Affidavit is submitted in support of a search warrant to search the following:

   a.) The person of **Adilson Jose MONTIERO,** DOB: **-**-1980, California Driver's License #****6516;

   b.) The residence located at **4000 44th Street, Sacramento, California**; and

1

    c.) **A black 2005 Chevrolet Tahoe, with California License Plate #6EOM023**.

4. Based on the facts set forth below, I believe that Adilson MONTIERO is currently involved in the distribution of cocaine and counterfeit MDMA tablets containing methamphetamine in the Sacramento, California area. I believe that MONTIERO is storing and distributing these substances from the residence located at 4000 44th Street, Sacramento, California (the "TARGET RESIDENCE"), which MONTIERO both controls and uses as a drug and money stash location. I also believe that based on the evidence described below, MONTIERO is utilizing the black 2005 Chevrolet Tahoe, California License Plate #6EOM023, to transport and distribute cocaine and methamphetamine. This Affidavit therefore requests authority to search the person of MONTIERO and the location and vehicle described in Attachments A-1 and A-2, in order to locate and seize the items described in Attachment B as evidence and instrumentalities of violations of 21 U.S.C. § 841 (distribution and possession with intent to distribute cocaine, methamphetamine, and counterfeit MDMA pills containing methamphetamine), and 18 U.S.C. § 922(g) (felon in possession of a firearm).

## Background of Investigation

5. Beginning mid-2020, I spoke with a Confidential Source (CS) regarding the cocaine/methamphetamine trafficking activities of an individual subsequently identified as Adilson MONTIERO.

6. It should be noted that the CS was and is cooperating with law enforcement in hopes of receiving consideration with regards to pending state charges. The CS has a criminal history including a felony conviction for a non-drug and non-firearm charge. The CS has in the past provided me with information and assistance with regards to investigations in which I was able to corroborate the CS's information through other CS's, subsequent data base checks and my own inquiries and which I believe has corroborated the CS's truthfulness. The CS's prior information regarding drug traffickers has been corroborated through subsequent seizures, arrests and interviews of targets. The CS's descriptions of drug dealing are consistent with my training and experience in this area and I have not found the CS's information to be false or misleading. The CS's information has been previously incorporated into federal search warrant affidavits subsequently authorized by the court. For these reasons, I consider the information provided by the CS in this matter to be reliable.

7. The CS related that he/she was an associate of an individual known by the Moniker "Gotti," subsequently identified as Adilson MONTIERO, AKA: Kunta Kinte BENJAMIN. The CS stated that MONTIERO currently lived in Sacramento, California at the residence located at **4000 44th Street, Sacramento, California**. The CS related that MONTIERO had during the last few years been involved in distributing large amounts of cocaine and "smacker" pills, which I know from my training and experience to be a common slang and reference to counterfeit MDMA tablets in a variety of shapes and colors but almost always containing methamphetamine. The CS stated that the CS and his/her associates had personally used "E pills," "Ecstasy Pills" and/or "Smacker Pills" he/she had obtained from MONTIERO in the past (including 2020) and that they had induced the same intoxicating effects. MONTEIRO had utilized all these same terms in referring to the pills as well as indicating that they were of high quality. MONTIERO had also told the CS that he obtained "boats" of these pills, which I known from my training and experience to be terminology denoting 1000-count quantities of MDMA/Methamphetamine tablets. The CS had routinely observed MONTIERO in possession of several hundred to a thousand of these "E pills" or "Smacker" pills and "brick" sized quantities of cocaine.

8. The CS also related that in addition to large-scale drug trafficking, "Gotti" was actively involved in pimping various women from this same residence. The CS had observed various women who had admitted to working as prostitutes at MONTIERO's direction at the residence on multiple occasions.

9. The CS advised that he/she had been communicating with MONTIERO via telephone and provided MONTIERO's number as **916-217-2882**. According to the CS, this was the telephone number MONTIERO utilized to conduct and arrange his drug trafficking activities.

10. Subsequent inquiries with the Sacramento County Sheriff's Department Known Person System revealed that Adilson MONTIERO currently listed a resident address of **4000 44th Street, Sacramento, California** and had a known listed moniker of "Gotti" as well as utilizing the names Kunta Kinte BENJAMIN and Fernando SAMOYA. Sacramento Sheriff's Department records further indicated that MONTIERO had a self-provided telephone number of **916-217-2882** listed for a driver's license under the name BENJAMIN (Driver's License #****6516).

11. Inquiries with the Thomas and Reuters CLEAR commercial database revealed that MONTIERO was associated with the above names and monikers (BENJAMIN, SAMOYA) and associated social security numbers and that he had most recently provided a resident address of 4000 44th Street, Sacramento, California. CLEAR

3

records further revealed that MONTIERO had self-reported a cellphone number of 916-217-2882.

12. Inquiries with NCIC indicated that MONTIERO had an extensive criminal history in California including numerous felony arrests and convictions for a variety of offenses including, but not limited to: robbery and assault with a firearm on a person (felony convictions Sacramento County 1999, sentenced to 3 years prison), pimping, pandering, false imprisonment, providing false information to a police officer, threaten crime with intent to terrorize, carrying a loaded firearm in public, battery on a spouse and multiple counts and convictions for supervising prostitution in Sacramento in 2009. I also noted that NCIC records reflected that MONTIERO was arrested in Utah in 2010 for Possession of Marijuana with Intent to Distribute and Sales of Marijuana and also in Utah in 2011 for Possession with Intent to Distribute a Controlled Substance but there were no associated adjudications to these charges listed.

13. I examined the Driver's License photograph corresponding to MONTIERO (Driver's License #****6516) which was listed to the name Kunta Kinte BENJAMIN and compared it against the Sacramento County Sheriff's Department booking photographs of MONTIERO and noted that they were the same individual.

14. I subsequently displayed the above described photographs to the CS who identified them all as that of Gotti, the individual living at 4000 44th Street, Sacramento, California who was storing and distributing the cocaine and counterfeit MDMA tablets suspected to contain methamphetamine from this residence.

15. During October of 2020, the CS related that he/she had again traveled to the residence at 4000 44th Street, Sacramento, California while in the company of other persons and that the CS had at this time again observed MONTIERO in possession of multiple hundred count quantities of the suspected methamphetamine tablets and large amounts of cocaine ("brick size") inside the residence. The CS also observed firearms inside the residence as well as women acting as prostitutes at MONTIERO's direction.

16. On a date between October 25th and November 3rd, 2020, I and SA Brian Nehring met with the CS in Sacramento, California. At this time, the CS was provided with Official Authorized Funds (OAF) and instructed to proceed directly to MONTIERO's residence at 4000 44th Street, Sacramento, California and to attempt to purchase suspected methamphetamine tablets and cocaine from MONTIERO. SA Nehring also outfitted the CS with a transmitter/recorder which allowed the ensuing meeting and transaction with MONTIERO to be reviewed and confirmed. Agents

then followed the CS and maintained surveillance from this neutral location directly to the residence at 4000 44th Street, Sacramento, California where the CS was observed parking and entering the residence on foot. At the time which the CS arrived at the location I observed a black 2005 Chevrolet Tahoe, California License Plate #6EOM023, parked on the street in front of the residence.

17. In reviewing the audio recording from the CS's monitoring equipment, agents could hear MONTIERO discuss his ongoing drug trafficking activities during this meeting. Shortly thereafter, the CS was observed exiting the residence and agents again followed the CS directly to the neutral location where the CS immediately turned over purported MDMA tablets suspected to contain methamphetamine (in a variety of colors and shapes) and suspected cocaine that the CS said he/she purchased from MONTIERO. The CS also advised that while inside the residence he/she had observed a large amount of cocaine and several hundred "smacker" pills in a bag from which MONTIERO had removed the pills which the CS had purchased from him. I examined the tablets and noted that they were nearly identical to and consistent with similar "smacker" tablets which I have encountered seized in other investigations and which were subsequently analyzed and found to contain methamphetamine. In addition, based on my training and experience, the suspected cocaine appeared to be cocaine. The pills and suspected cocaine have been sent to the DEA lab for analysis; lab results are pending.

18. Subsequent to this drug purchase and on the same day, I observed MONTIERO exit the TARGET RESIDENCE and depart in the same Chevy Tahoe bearing California license plate 6EOM023 which was parked on the side of the residence. I subsequently traveled to the residence on subsequent days in November of 2020 and observed this same vehicle parked at the residence.

### Training and Experience Regarding Drug Trafficking and Drug Traffickers

19. As a result of my experience and training, I have learned that traffickers who deal in various quantities of controlled substances, or those that assist in that venture, maintain and tend to retain accounts or records of those transactions. Such records detail amounts outstanding, owed, or expended, along with records tending to indicate the identity of co-conspirators. These records may be kept on paper or contained in memory calculators or computers. It is also my experience that these traffickers tend to keep these accounts and records in their residence and in the areas under their control. It is my training and experience, that in the case of drug dealers, evidence is likely to be found where the dealers live. It is also my training and

experience that where criminal activity is long-term or ongoing, equipment and records of the crime will be kept for some period of time.

20. Based upon my experience and training, I have learned that drug traffickers often place their assets in names other than their own to avoid detection of those assets by law enforcement and the Internal Revenue Service (IRS); that those persons are commonly family members, friends, and associates who accept title of assets to avoid discovery and detection; that traffickers also often place assets in the ownership of corporate entities to avoid detection by law enforcement agencies and although these assets are in other individual(s) or corporate names, the traffickers continue to use these assets and exercise dominion and control over them. Typically traffickers keep records of those registrations and transactions in their residence.

21. I have learned that large-scale drug traffickers often have on hand large amounts of United States currency in order to maintain and finance their ongoing business. It has been my experience that drug traffickers often keep large sums of currency, caches of drugs, financial instruments, precious metals, jewelry, automobiles and other items of value and/or proceeds of drug transactions, including evidence of financial transactions related to obtaining, transferring, secreting or spending large sums of money acquired from engaging in the acquisition and distribution of controlled substances in their residence or in the areas under their control.

22. In my experience, drug traffickers commonly have in their possession, that is, on their person, at their residence and in the areas under their control, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Such firearms are used by drug violators to protect their illicit drug trafficking operations, and themselves against law enforcement and other drug violators because the illicit drug trade is an inherently dangerous illegal activity involving large amounts of valuable contraband and drug proceeds. Such property may include, but is not limited to, narcotics and other dangerous drugs, jewelry, narcotic paraphernalia, books, records, ledgers and quantities of currency.

23. In my experience, traffickers commonly have in their possession, that is on their person, at their residences, and their vehicles, and in the areas under their control and which they have free and ready access to, drugs, including but not limited to in this case, cocaine, cocaine base, methamphetamine, and counterfeit MDMA pills containing methamphetamine, which they intend to distribute. It is my experience that these drug traffickers commonly use these areas (vehicles, residences, properties, etc.) as locations to conceal their narcotics from law enforcement.

24. In my experience, drug traffickers may take or cause to be taken, photographs or videotapes of themselves, their associates, their property, and their product. Such traffickers often maintain photographs and/or videotapes and digital recordings at their residence or in the areas under their control.

25. In my experience, large scale traffickers often maintain in their possession and at their residence fictitious identification, including but not limited to, driver's licenses, employment cards, insurance cards, social security cards, certificates of birth and passports which are obtained by the traffickers and used in an effort to prevent law enforcement identification of the traffickers and their drug trafficking activities.

26. In my experience, drug traffickers often use vehicles in which to transport and distribute controlled substances in facilitation of their trafficking activities. It has also been my experience that traffickers will also use vehicles as locations in which to store controlled substances prior to distribution. During prior investigations, I have observed that drug traffickers will often use vehicles registered in the names of individuals other than themselves in an effort to avoid detection by law enforcement.

27. In addition, these traffickers tend to attempt to legitimize their assets by establishing domestic and foreign businesses, by creating shell corporations, by use bank haven countries and attorneys specializing in drafting and establishing such entities employed to "launder" the proceeds derived from the distribution of controlled substances.

28. In establishing these entities, the traffickers often must travel to meetings in foreign countries as well as domestically. As a result of that travel, records are generated reflecting travel by commercial and private aircraft, Commercial Ocean and private vessels as well as common carrier(s).

29. Individuals involved in the distribution cocaine, cocaine base, methamphetamine, and counterfeit MDMA pills containing methamphetamine often make, or cause to be made, pictures, videos, digital recordings, movies, compact discs, or other such items which are or contain photographic or digital images in order to memorialize their narcotics distribution, use, possession, or any other activities surrounding their drug trafficking activities, and that such items often identify co-conspirators in their drug trafficking activities.

30. It has been my experience in the past, and particularly in this case, that when suspects use mobile telephones to communicate with cooperating individuals or undercover agents to set up drug deals, records relating to these activities will be found stored in the cellular telephone.

31. I know that narcotics traffickers use mobile telephones to communicate with one another, either by voice or text message.  Mobile telephones preserve in their memory a history of incoming, outgoing, and missed calls, which can lead to evidence of the telephone numbers of other narcotics traffickers and the dates and times that they and/or the mobile telephone user dialed one another's telephones.  Mobile telephones also contain in their memory a telephone book.  This allows the user to store telephone numbers and other contact information; the information stored in a telephone used by a narcotics trafficker is evidence of the associations of the narcotics trafficker, some of which are related to his or her illegal business.  Mobile telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user.  The text message history of a narcotics trafficker's mobile telephone can contain evidence of narcotics trafficking because it shows the communications or planned communications of a narcotics trafficker and the telephone numbers of those with whom the narcotics trafficker communicated or intended to communicate.  Mobile telephones also have a voicemail function that allows callers to leave messages when the telephone user does not answer.  Narcotics traffickers sometimes leave voice messages for each other and this is evidence both of their mutual association and possibly their joint criminal activity.  Mobile telephones can also contain other user-entered data files such as "to-do" lists, which can provide evidence of crime when used by a narcotics trafficker. Mobile telephones can also contain photographic data files, which can be evidence of criminal activity when the user was a narcotics trafficker who took pictures of evidence of crime.  Mobile telephone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile telephones.

32. As described above and in **Attachments A-1, A-2,** and **B**, this Affidavit seeks permission to search and seize things that are related to the cocaine and methamphetamine trafficking activities of MONTIERO and his suspected co-conspirators and criminal associates, in whatever form such things are stored.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Even when a user deletes information from a device, it can sometimes be recovered with forensics tools.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

33. Based on my experience and training and conversations with other law enforcement officers, I know that searching photographs and videos can help corroborate firearms possession as it is not uncommon for drug traffickers and those involved in criminal activity to photograph or record themselves with firearms.  I also know that illegal drug dealers frequently take photographs and/or videos of their firearms, narcotics,

8

and associates, often using a cellular telephone. These photographs are then commonly shared and posted to the internet using social media sites such as Facebook, Instagram, and Snapchat.

34. It is my opinion, based on my training and experience, and the training and experience of other law enforcement investigators to whom I have spoken, that the items listed in **Attachment B** are items most often associated with the distribution of controlled substances, including cocaine and methamphetamine, as well as the proceeds from such illegal operations.

35. The facts set forth in this Affidavit are known to me as a result of my personal participation in this investigation, through conversations with other agents and detectives who have participated in this investigation, and from reviewing official reports, documents, and other evidence obtained as a result of this investigation. This Affidavit is not an exhaustive enumeration of the facts that I have learned during the course of this investigation but, instead, are facts that I believe support a finding of probable cause to search the requested locations.

36. Based on my experience and training, and after consulting with other law enforcement officers experienced in drug investigations, I know that individuals involved in drug dealing often maintain at their residences, vehicles, and their persons the items described in **Attachment B**. Individuals involved in drug dealing also often maintain paraphernalia for packaging, weighing, cutting, testing, distributing, and identifying controlled substances. Therefore, I am requesting authority to seize all the items listed in **Attachment B** to this Affidavit and incorporated here by reference.

## Conclusion

37. In this case, the facts set forth in this Affidavit demonstrate probable cause to believe that the person of MONTIERO, and the location and vehicle listed in **Attachments A-1 and A-2** to this Affidavit contain evidence of a crime, contraband, fruits of a crime, and other items illegally possessed, property designed for use, intended for use, or used in committing a crime, specifically, distribution and possession with intent to distribute cocaine, methamphetamine, and counterfeit MDMA tablets containing methamphetamine in violation of 21 U.S.C. §841, and possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g).

38. Specifically, I respectfully request authority to search:

   a.) The person of **Adilson Jose MONTIERO**;

b.) The residence located at **4000 44th Street, Sacramento, California**;

c.) **A black 2005 Chevrolet Tahoe, with California License Plate #6EOM023**.

### Request to Seal

39. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation and safety of the agent and officers executing the search warrant.

I swear under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information and belief.

/s/ Joshua Matas
_____

Joshua Matas, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me telephonically on the __12th__ day of November 2020

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Approved as to form:

____/s/ David Spencer_____
DAVID W. SPENCER
Assistant U.S. Attorney

10

## Attachment B
## Items to be Seized

Agents are authorized to search and seize property that constitutes evidence, fruits, and instrumentalities of violations of the following federal statutes (the "Target Offenses"), committed by Adilson MONTIERO and his co-conspirators:

- 21 U.S.C. § 841 –Distribution and Possession with Intent to Distribute cocaine, methamphetamine, and counterfeit MDMA pills containing methamphetamine; and
- 18 U.S.C. § 922(g) – Felon in possession of a firearm.

As further described in the Affidavit, the specific evidence, fruits, and instrumentalities of the Target Offenses for which agents may search includes:

1. Controlled substances, including cocaine, methamphetamine, and purported MDMA pills, or items frequently used to distribute cocaine, methamphetamine, and purported MDMA pills or items containing residue from the distribution of cocaine, methamphetamine, and purported MDMA pills; drug-trafficking paraphernalia, including scales, measuring devices, and weighing devices; narcotics diluting or cutting agents; narcotics packaging materials, including plastic, tin foil, cellophane, jars, plastic bags, and containers; and plastic surgical gloves;

2. United States and foreign currency linked to drug trafficking and/or the proceeds of drug trafficking;

3. Narcotics or money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed;

4. Telephone paging devices, beepers, mobile phones, car phones, answering machines and tapes, and other communication devices which could be used to participate in a conspiracy to distribute controlled or counterfeit substances in violation of 21 U.S.C. § 841;

5. Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfer, or movement of money generated from the sale of narcotics;

6. Personal telephone books, address books and other such address listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes connected to drug trafficking, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

7. Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including travelers checks, bonds, stock certificates, cashier's checks and certificates of deposit; money counting machines, money wrappers and bags used to carry controlled substances;

8. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sale of controlled substances;

9. Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

10. Handguns, shotguns, rifles, explosives, and other firearms/incendiary devices and ammunition that may be used to facilitate the distribution or possession of, with the intent to distribute controlled substances or discovered in the possession of a prohibited person; and

11. Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | ) | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | Case No.    2:20-sw-1042 KJN |
| Adilson Jose MONTIERO | ) | |
| | ) | **SEALED** |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     Eastern     District of     California    
*(identify the person or describe the property to be searched and give its location)*:

**Adilson Jose Montiero**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before     November 26, 2020     *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.  ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
    ☐ for    30    days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of                .

Date and time issued:    November 12, 2020 at 4:32 p.m.

*/s/ Kendall J. Newman*
**KENDALL J. NEWMAN**
**UNITED STATES MAGISTRATE JUDGE**

City and state:    Sacramento, California

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name of any person(s) seized: |||

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____    _____
                      Signature of Judge                                         Date

## Attachment B
## Items to be Seized

Agents are authorized to search and seize property that constitutes evidence, fruits, and instrumentalities of violations of the following federal statutes (the "Target Offenses"), committed by Adilson MONTIERO and his co-conspirators:

- 21 U.S.C. § 841 –Distribution and Possession with Intent to Distribute cocaine, methamphetamine, and counterfeit MDMA pills containing methamphetamine; and
- 18 U.S.C. § 922(g) – Felon in possession of a firearm.

As further described in the Affidavit, the specific evidence, fruits, and instrumentalities of the Target Offenses for which agents may search includes:

1. Controlled substances, including cocaine, methamphetamine, and purported MDMA pills, or items frequently used to distribute cocaine, methamphetamine, and purported MDMA pills or items containing residue from the distribution of cocaine, methamphetamine, and purported MDMA pills; drug-trafficking paraphernalia, including scales, measuring devices, and weighing devices; narcotics diluting or cutting agents; narcotics packaging materials, including plastic, tin foil, cellophane, jars, plastic bags, and containers; and plastic surgical gloves;

2. United States and foreign currency linked to drug trafficking and/or the proceeds of drug trafficking;

3. Narcotics or money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed;

4. Telephone paging devices, beepers, mobile phones, car phones, answering machines and tapes, and other communication devices which could be used to participate in a conspiracy to distribute controlled or counterfeit substances in violation of 21 U.S.C. § 841;

5. Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfer, or movement of money generated from the sale of narcotics;

6. Personal telephone books, address books and other such address listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes connected to drug trafficking, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

7. Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including travelers checks, bonds, stock certificates, cashier's checks and certificates of deposit; money counting machines, money wrappers and bags used to carry controlled substances;

8. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sale of controlled substances;

9. Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

10. Handguns, shotguns, rifles, explosives, and other firearms/incendiary devices and ammunition that may be used to facilitate the distribution or possession of, with the intent to distribute controlled substances or discovered in the possession of a prohibited person; and

11. Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records